United States District Court
for the
Southern District of Florida

| | |
|---|---|
| In re: | ) |
| | ) |
| Elizabeth K. Richert, Debtor. | ) Civil Action No. 23-20779-Civ-Scola |
| | ) |
| | ) |
| Elizabeth K. Richert, Appellant, | ) |
| | ) |
| v. | ) |
| | ) Bankruptcy Case No. 22-16713-RAM |
| Kathleen White Murphy, and Thomas White, Appellees. | ) |
| | ) |

## Opinion and Order

This matter is before the Court on Appellant Elizabeth K. Richert's Initial Brief (ECF No. 22)[1] on her appeal of the bankruptcy court's orders converting her case from Chapter 13 to Chapter 7, as well as several orders (appealed supplementally) relating to objections to creditors' claims.[2] The Appellees have submitted their Answer Brief. (ECF No. 29.) The Appellant filed a Reply Brief. (ECF No. 32.) The Appellees have also filed a motion to dismiss the Appellant's appeal of the bankruptcy court's denial of her request for a stay pending appeal. (Mot. Dismiss, ECF No. 30.) The Appellant has responded. (Resp., ECF No. 31.) The Appellees have not filed an optional reply, and the time to do so

---

[1] The Appellant was initially represented by counsel, and counsel signed both the Initial Brief and the Reply Brief. The Court has since granted counsel's motion to withdraw, and the Appellant has elected to proceed pro se.

[2] Originally, the bankruptcy court orders that are the subject of appeal here are the following orders, as identified on the bankruptcy court's docket: Bk. ECF No. 188 ("Order Granting Motion to Convert Case to Chapter 7"), Bk. ECF No. 222 ("Order Denying Motion for Reconsideration"), and Bk. ECF No. 239 ("Order Denying Motion for Reconversion to Chapter 13"). The Court will refer collectively to these orders as the "Conversion Orders," or will reference them individually by docket entry number from the bankruptcy court case (as "Bk. ECF No."), as appropriate. Additionally, the Appellant has filed supplemental appeals regarding the following orders: Bk. ECF No. 242 ("Order Overruling, Without Prejudice, Debtors' Amended Objection to Claim"), Bk. ECF No. 243 ("Order Granting Amended Motion for Entry of Order Extending Deadlines to File Adversary Complaint(s) to Dischargeability of Debts and to Debtor's Discharge"), Bk. ECF No. 262 ("Order Reserving Ruling on Objection to Claim No. 4"), and Bk. ECF No. 263 ("Order Granting Ex Parte Motion for Continuance of Chapter 7 341 Meeting"). The Court will refer collectively to these orders as the "Claims Orders." Finally, the Appellant also filed a supplemental appeal of Bk. ECF No. 292 below ("Amended Order Denying (Emergency) Motion to Stay Pending Appeal," which the Court will reference as the "Stay Order," and which is the subject of the Appellees' motion to dismiss).

has passed. After considering the briefs, the record, the argument of counsel, and the applicable authority, and for the reasons set forth below, the Court **affirms** the bankruptcy court's orders and **grants** the Appellees' motion to dismiss. (**ECF No. 30**.)

### 1. Background

The Appellant (and Debtor below), Elizabeth K. Richert, filed a voluntary petition for Chapter 13 bankruptcy in the Southern District of Florida on August 30, 2022. This appeal, however, arises out of a series of ongoing litigation stretching back to 2015. That series of lawsuits arose from the Appellant's role as the successor trustee to the Robert L. Richert Revocable Trust (the "Robert Trust"), which she assumed after Mr. Richert, her uncle, became incapacitated and later passed away in 2009. (R. Part 10 at 33-34, ECF No. 23-13.)[3] Anna White, Robert's sister and the Appellant's aunt, originally filed suit against the Appellant in Illinois state court in 2015. (*Id.*) Anna sought production of a deed to a house located in Buffalo Grove, Illinois (the "Buffalo Grove Property"), an accounting of the Robert Trust, and the dissolution of a receipt and release she had signed relating to her rights to distributions from the Robert Trust. (*Id.*) The Appellant removed the case to federal court based on diversity jurisdiction, and the Illinois federal court retained jurisdiction after Anna White passed away. (*Id.*) Anna's children, Ms. White Murphy and Mr. White (the Appellees here), continued the case as representatives of Anna's estate. (*Id.* at 30, 33 n.2.)

### A. The Illinois Litigation

The Illinois litigation centered around the identification of the authentic trust documents for the Robert Trust and the Appellant's actions as the trustee disposing of the trust property. (*Id.* at 34.) The Illinois court found that the Robert Trust held title to Robert's house in Arizona and $611,814.45 in a Fidelity Investments account at the time of his death. (*Id.*) The court also found that three different versions of the trust documents were produced during the course of the matter. (*Id.* at 36.) The first two—Versions "A" and "B"—were identical, except for the fact that Version A contained two post-it notes and record of transmission by fax. (*Id.*) Both Version A and Version B directed that

---

[3] Given the extensive nature of the record in this matter, and the fact that it has been transmitted in multiple parts, the Court will cite to the record using the docket entry number and the page number stamped on upper-right hand corner of that particular entry number by CM/ECF. In total, the record comprises fourteen separate documents: ECF Nos. 23-3 through 23-11 and ECF Nos. 23-13 through 23-17. The Appellant's designations are available at ECF No. 23-2, and the Appellees' designations are available at ECF No. 23-12.

Anna White was to receive forty-seven percent of the trust estate if she survived Robert. (*Id.* at 37.) Both versions also provided that six percent of the trust estate was to be distributed among several named charitable organizations. (*Id.*) Further, both versions directed that Robert's Arizona home be distributed to the Appellant. (*Id.*) Because the Arizona home was part of the trust estate, neither version specified what was to be done with the remaining forty-seven percent of the trust estate. (*Id.* at 37-38.) The third, Version "C," contained a new clause directing that the remaining forty-seven percent of the trust estate be distributed to the Appellant. (*Id.* at 38.)

The Illinois court ultimately found, however, that Version C was a fabrication by the Appellant. (*Id.*) The Appellant testified that she had originally discovered Version C "months after Robert had passed away in a locked floor safe in the master bedroom closet" of the Arizona home. (*Id.* at 39 (cleaned up).) But the Appellant did not produce a copy of Version C until 2017. (*Id.*) This was because, she claimed, the original had been stolen from her home in Florida, and that she never reported the burglary to the police. (*Id.* at 39-40.) Despite this, she testified, the copy of Version C was later left in her mailbox "in an opaque plastic bag" in "early 2017." (*Id.*) The Illinois court found the Appellant's testimony not to be credible and ultimately determined that she had fabricated Version C of the trust documents. (*Id.*)[4] Accordingly, the Illinois court determined that Anna White was owed a one-third intestate share in distributions from the remaining forty-seven percent of the estate of the Robert Trust. (*Id.* at 72.)

It also found that, between 2009 and 2010, the Appellant wrote a total of $622,364.91 in checks from the Fidelity account. (*Id.* at 35.) Of those checks, $154,823.09 were made out to Anna White. (*Id.*) The remaining $467,541.82 were made out to "cash." (*Id.*) The Appellant testified to the Illinois court that "she could not remember how the $467,541.82 had been spent." (*Id.*)

Separately, the Illinois court determined that the Appellant also held title to the Buffalo Grove Property as Trustee of the Robert Trust. (*Id.* at 44-45.) Anna White originally sought to purchase the Buffalo Grove Property so that she and her husband, who had "difficulty navigating stairs," could live in a residence "without stairs." (*Id.* at 43.) After some discussion, the Appellant agreed to loan Anna the purchase money for the house. (*Id.* at 44.) The Appellant testified that she was to take title to the Buffalo Grove Property personally until Anna paid her back the purchase price of $200,000. (*Id.*) But

---

[4] The Illinois court reviewed more reasons why it chose not to credit this testimony. (*Id.*) They need not be recounted in full here—it suffices to establish the fact that Version C of the trust documents was found to be a fabrication.

the loan agreement and the warranty deed to the property both stated that the Appellant held title in her capacity as the Trustee of the Robert Trust. (*Id.* at 44-45.)

After extensive litigation,[5] the Illinois court concluded at a bench trial that the Appellant breached her fiduciary duty that she owed to Anna White as a beneficiary of the Robert Trust. (*Id.* at 71-73.) The Illinois court found that the Appellant did so by "failing to administer the authentic version of the Robert Trust according to its terms and failing to distribute to Anna White her share of the trust assets." (*Id.* at 72.) The Illinois court ultimately awarded Anna a total of $246,152.76 in damages, including punitive damages for the Appellant's "reprehensible conduct" as Trustee toward Anna, as a beneficiary. (*Id.* at 92, 102.)[6] The Illinois court did not rule on disposition of the Buffalo Grove Property, however, because it had previously dismissed the claim relating to the property as time-barred. (*Id.* at 109.)

### B. Subsequent Litigation and Bankruptcy Proceedings

The Illinois court's order sparked a flurry of further litigation. Particularly relevant here are two other matters. First, the Appellant appealed the Illinois court's order to the Seventh Circuit Court of Appeals.[7] Second, the Appellees registered the judgment of the Illinois court against the Appellant for enforcement here in the Southern District of Florida. *Murphy v. Richert*, Case No. 22-21296-MC, ECF No. 1 (S.D. Fla. Apr. 26, 2022) (Scola, J.). After some progress in the judgment enforcement action in front of this Court, and on the eve on a contempt hearing scheduled to be held in front of Magistrate Judge Goodman, the Appellant filed for bankruptcy under Chapter 13. Case No. 22-21296-MC, ECF Nos. 18, 27-29 (S.D. Fla. Aug. 30, 2022).

---

[5] A review of the Illinois case's procedural history is available in the Illinois court's May 27, 2021, opinion, which is contained in whole in the record. (*Id.* at 30-115.)

[6] Because the fiduciary duty claim related only to the distribution of the remaining forty-seven percent of the trust estate (not to Anna White's specified forty-seven percent), the Illinois court determined damages to be $95,850.83. (*Id.* at 78.) The Illinois court also found that none of the $154,823.09 previously distributed to Anna White could be counted toward this amount because Ms. Richert never provided a trust accounting or argued that it should be so apportioned. (*Id.* at 79.) Based on Ms. Richert's conduct as the Trustee (which the Court has only briefly addressed here, and which the Illinois court found to be "reprehensible" by clear and convincing evidence under Arizona law), the Illinois court awarded punitive damages of $95,850.83. (*Id.* at 92, 102.) It also awarded prejudgment interest of $54,451.10. (*Id.* at 102.)

[7] The Seventh Circuit has since affirmed the Illinois court's decision. *Murphy v. Richert*, Case No. 23-3203, 2023 WL 2200963, at *1 (7th Cir. Feb. 24, 2023); (R. Part 13 at 410-14, ECF No. 23-16.) The Seventh Circuit has subsequently denied Ms. Richert's request for rehearing en banc. *Murphy v. Richert*, Case No. 23-3202, 2023 WL 2603475, at *1 (7th Cir. Mar. 22, 2023).

The Appellant's bankruptcy proceedings, unsurprisingly, became mired in more disputes between the Appellant, as the Debtor, and the Appellees, as creditors. The Appellees' claim (the judgment from the Illinois court) was submitted in the bankruptcy proceeding as Claim 5. (R. Part 13 at 214-15, ECF No. 23-16.) After the Appellant voluntarily converted her case to Chapter 11, and then moved to reconvert to Chapter 13,[8] the Appellees moved to involuntarily convert the Appellant's then-Chapter 11 bankruptcy to Chapter 7. (R. Part 1 at 63-70, ECF No. 23-3.) The Appellees argued that the Appellant's lack of good faith in her bankruptcy filing, her pre-petition conduct, and her unsuitability for Chapter 13 relief all supported involuntary conversion to Chapter 7. (*Id.* at 65-69.)

The bankruptcy court, while reconverting the Appellant's case to Chapter 13, ordered her to file a response to the Appellees' conversion motion by January 6, 2023, to attach copies of any trust documents for any trust holding title to real property she claimed as part of her bankruptcy estate, and to appear for a Rule 2004 Examination by the Appellees. (*Id.* at 128-29.) The bankruptcy court kept the Appellees' conversion motion open and treated it as a motion to convert from Chapter 13 to Chapter 7. (*Id.*)

In response to the bankruptcy court's order, the Appellant filed a response to the motion to convert to Chapter 7 on January 6, 2023, and a supplemental response on January 8. (R. Part 13 at 1-43, ECF No. 23-16.) She attached a warranty deed to the January 6 response purporting to transfer Robert Richert's Arizona home from herself to the "Elizabeth K. Richert Revocable Trust." (*Id.*) She then attached a "Land Trust Agreement" relating to her Miami real property and an "Amended and Restated Elizabeth K. Richert Trust Agreement," both of which were heavily redacted, to the January 8 supplemental response. (*Id.*) The Appellant never requested or received leave to file the trust documents with redactions, and she was denied leave to file them under seal. (R. Part 1 at 129, ECF No. 23-3.)

The Appellant also refused to produce any documents to the Appellees prior to her 2004 Examination, arguing that the bankruptcy court's reconversion order did not require any document production. (R. Part 12 at 46, ECF No. 23-15.) The bankruptcy court then clarified its order in response to a motion by the Appellees, stating that the Appellees were, in fact, able to serve discovery requests on the Appellant prior to the 2004 Examination. (*Id.* at 45-48.) Undeterred, the Appellant filed an emergency motion for a protective order,

---

[8] Based on the Appellant's argument that the conversion was a mistake by her attorneys, the bankruptcy court eventually granted her reconversion motion and reconverted the case to Chapter 13.

which the bankruptcy court denied. (R. Part 5 at 1-31, ECF No. 23-7; R. Part 13 at 261-62, ECF No. 23-16.) The Appellant then produced a limited set of documents, including a deed to her Miami property, an appraisal for the Arizona property, redacted vehicle registration, a partially redacted "Land Trust" purportedly holding title to the Miami property, and three post-petition bank statements for accounts with TD Bank and Navy Federal Credit Union. (R. Part 13 at 1-43, ECF No. 23-16.) The Appellant did not, at the time, disclose an account with a third bank (Patelco) and, as of the time of this appeal, still has not produced any bank statements from that account. (*Id.* at 57-65, 80-85, 87-117, 119-39, 141-45.)

On January 30, 2023, following the Appellant's limited document production, refusal to answer thirty-one questions at her 2004 Examination, and her failure to provide bank account statements verifying that she had regular monthly income with which to fund a Chapter 13 plan, the bankruptcy court converted her case to Chapter 7. (R. Part 5 at 82-86, 388-94.) The court did so both due to her failure to substantiate income and assets that would support a Chapter 13 plan and as sanctions for her failure to provide discovery and fully participate in her 2004 Examination. (*Id.* at 388-94.) Standing by its reasoning, the bankruptcy court refused to reconsider its conversion order or reconvert the Appellant's bankruptcy to Chapter 13. (R. Part 5 at 87-90, 91-112, 145-47, ECF No. 23-7; R. Part 13 at 365-99, ECF No. 23-16.)

Separately from the issues of the Appellant's case status, the bankruptcy court overruled the Appellant's objections to the Appellees' claim (Claim 5). (R. Part 5 at 148-49, ECF No. 23-7.) Ms. Murphy White and Mr. White registered their claim based on the Illinois court's judgment in Anna White's favor. (R. Part 13 at 214-15, ECF No. 23-16.) The Appellant objected to the claim, based largely on her appeal to the Seventh Circuit. (*Id.*) The bankruptcy court allowed Claim 5, with the caveat that the Appellant had the right to refile her objection if the Seventh Circuit ruled in her favor (as the Court observed earlier, it did not). (R. Part 5 at 148-49, ECF No. 23-7.). It also allowed the Appellees to potentially assert Claim 5 as a secured claim, if the judgment against the Appellant was recorded and a lien therefore attached to any of her property. (*Id.*) The bankruptcy court also refused to strike Claim 4—a claim by Jeffrey Jacobson, one of the Appellant's former attorneys—as untimely, instead choosing to reserve ruling on that claim until "necessary for purposes of distribution." (*Id.* at 156-57.)

Finally, the Appellant moved for an emergency stay of her bankruptcy proceedings pending appeal, which the bankruptcy court denied on April 14, 2023. (Third Suppl. Not. Appeal at 2-3, ECF No. 28-1.) The bankruptcy court found the emergency motion to lack merit, the Appellant to have little

likelihood of success on appeal, and that a stay would be prejudicial to the creditors. (ECF No. 28-1 at 2-3.) The Appellant filed her notice of supplemental appeal here on May 11, 2023. (Third Suppl. Not. Appeal.) The Appellees, in response, moved to dismiss the Appellant's supplemental appeal of this denial, arguing that the Appellant did not file her appeal within the fourteen-day deadline required by Bankruptcy Rules of Civil Procedure 8002(a)(1) and 8004(a). (Mot. Dismiss, ECF No. 30.) The Appellant does not address the timeliness argument in her response, asserting only that she filed a "Supplemental Notice of Appeal," not a "Supplemental Appeal," as the Appellees state in their motion, and that the Clerk of the Court accepted her Supplemental Notice. (Resp. ¶¶ 2, 5, ECF No. 31.)

### C. Issues on Appeal

There are six issues that the Court must address: the five issues on appeal that the Appellant identifies in her Initial Brief, and the Appellees' motion to dismiss the Third Supplemental Notice of Appeal. The five identified issues on appeal are the following:

1) Whether the bankruptcy court erred in converting the Appellant's bankruptcy case to Chapter 7 from Chapter 13;
2) Whether the bankruptcy court erred in denying the Appellant's motion for reconsideration and motion for reconversion to Chapter 13;
3) Whether the bankruptcy court erred by failing to give full faith and credit to the Illinois court's findings regarding ownership of title to the Buffalo Grove Property;
4) Whether the bankruptcy court erred by reserving ruling on Claim 4 until necessary for purposes of distribution;[9] and
5) Whether the bankruptcy court erred by finding Claim 5 to be valid, limiting the Appellant's right to refile her objection to Claim to only circumstances where the Seventh Circuit overturned the Illinois court's decision, and allowing the Appellees to assert a secured claim in the event judgment on the claim is recorded.

---

[9] The Appellant states this issue in her Initial Brief as whether "the Bankruptcy Court Erred as a Matter of Law Refusing to Strike Proofs of Claim 3 and 4 Absent Excusable Neglect." (Init. Brief at 1.) The underlying bankruptcy order that the Appellant actually appeals, however, only addresses Claim 4, not Claim 3. (Second Suppl. Not. Appeal at 1, ECF No. 7-1; R. Part 5 at 156-57, ECF No. 23-7.)

(Initial Brief at 1-2.) The Court must also address whether it has jurisdiction to hear the supplemental appeal of the bankruptcy court's denial of the Appellant's emergency motion for stay pending appeal and, if it has jurisdiction, whether the bankruptcy court erred in denying the stay. (Third Not. Suppl. Appeal; Mot. Dismiss; Resp.)[10]

### 2. Standard of Review

District courts "must accept the bankruptcy court's factual findings unless they are clearly erroneous, but reviews a bankruptcy court's legal conclusions *de novo*." *Stewart Title Guar. Co. v. Roberts-Dude*, 497 B.R. 143, 149 (S.D. Fla. 2013) (internal quotes omitted) (quoting *In re Englander*, 95 F.3d 1028, 1030 (11th Cir. 1996)). Under *de novo* review, the Court independently examines the law and draws its own conclusions after applying the law to the facts of the case, without regard to decisions made by the Bankruptcy Court. *Stewart*, 497 B.R. at 150. Under review for abuse of discretion, "a reviewing court 'must affirm unless [it] find[s] that the lower court has made a clear error of judgment, or has applied the wrong standard.'" *In re Siskind*, 2018 WL 634547, at *1 (S.D. Fla. Jan. 31, 2018) (Rosenberg, J.) (quoting *In re Walker*, 532 F.3d at 1308.) "The reviewing court may affirm on any legal ground supported by the record." *Id.*

### 3. Analysis

The Court first addresses the Appellant's arguments on appeal, in the order that she framed them in her Initial Brief. It then addresses the Appellees' motion to dismiss the supplemental notice of appeal of the bankruptcy court's denial of the motion for emergency stay pending appeal. As addressed in greater detail below, the Court affirms each of the bankruptcy court's orders. It also dismisses the supplemental appeal of the order denying the Appellant's motion for an emergency stay pending appeal for lack of jurisdiction.

### A. The bankruptcy court did not err by converting the Appellant's case from Chapter 13 to Chapter 7 or by denying the Appellant's motions for reconsideration and reconversion.

The central issue in this appeal is the bankruptcy court's decision to involuntarily convert the Appellant's Chapter 13 reorganization case to a Chapter 7 liquidation. (R. Part 5 at 82-86, 388-94, ECF No. 23-7.) The

---

[10] The Appellant has not filed, or requested to file, supplemental briefing relating to her appeal of the denial of her emergency motion for a stay pending appeal. Rather, her only briefing on the issue is her response to the Appellees' motion to dismiss. (Resp.)

Appellant argues that her case is not fit for a Chapter 7 liquidation because she "has disposable income with which to fund a Chapter 13 repayment plan." (Init. Brief at 8-9.) She also argues (albeit in her statement of facts) that the bankruptcy court improperly considered evidentiary testimony from the Appellees' Illinois attorneys during the hearing on the Appellees' motion to convert the case to Chapter 7. (*Id.* at 3.) The Appellees respond that the bankruptcy court both had sufficient reasons for converting the case on its face and also validly converted the case in part as a sanction for the Appellant's failure to comply with the court's orders. (Ans. Brief at 35-38.)

The bankruptcy court did not err when it involuntarily converted the Appellant's case to Chapter 7. The conversion was amply supported by two independent factors: first, the Appellant's failure to provide substantiation of regular income and assets with which she could fund a Chapter 13 plan, and second, the Appellant's failure to abide by the bankruptcy court's orders. (R. Part 5 at 388-94, ECF No. 23-7.)

The Appellant's actions in her bankruptcy case, as discussed by the bankruptcy court below, demonstrate a lack of good faith in her Chapter 13 proceedings. (*Id.*); *In re Letterese*, 397 B.R. 507, 512 (Bankr. S.D. Fla. 2008) (Olson, J.) ("There is an inherent requirement of good faith in chapter 13 cases."). The determination of a debtor's good faith is made "on a case-by-case basis upon a consideration of the totality of the circumstances." *Letterese*, 397 B.R. at 512 (citing *In re Kitchens*, 702 F.2d 885, 888 (11th Cir. 1983)). While not an exhaustive list, courts may consider "the amount of the debtor's income from all sources, . . . the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13," and "the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors" when determining a debtor's good faith. *Kitchens*, 702 F.2d at 888.

At the conclusion of the hearing on the motion to convert to Chapter 7, the bankruptcy court observed that the following issues supported its decision to grant the motion and convert:

1) The Appellant failed to comply with the terms of the bankruptcy court's order granting her reconversion from Chapter 11 to Chapter 13. (R. Part 5 at 390:19–391:2, 391:7-18, ECF No. 23-7.)

2) The Appellant's Chapter 13 reorganization plan "relie[d] almost entirely on the sale of property [the Buffalo Grove Property] to which ownership is disputed." (*Id.* at 391:3-5.)

3) The Appellant's Chapter 13 reorganization plan also relied "in part on alleged $2,000 income designated as trust income, which there's been no explanation for," and which the Appellant never substantiated via discovery. (*Id.* at 391:5-7.)

4) The Appellant filed amended schedules supporting her Chapter 13 reorganization plan that "by the concessions of the debtor's counsel" were "not accurate." (*Id.* at 391:23-24.)

5) The Appellant produced trust documents in support of her Chapter 13 plan that were heavily redacted, without leave of the bankruptcy court to redact and in violation of the bankruptcy court's prior order, and which "provide[d] no meaningful information to the [bankruptcy court]." (*Id.* at 391:25–392:4.)

6) The Appellant refused to answer many of the Appellees' questions at her Rule 2004 Examination, including questions about "her source of income," and at the time of the bankruptcy court hearing, still had "not provided an explanation of what her income is or where it comes from." (*Id.* at 392:5-14.)

Based on these observations, the bankruptcy court determined that the Appellant "failed to take meaningful action to either promote a good faith feasible Chapter 13 plan or to provide discovery, including the details of the trust, the details of her financial affairs, the details of her income." (*Id.* at 392:23–393:2.) The bankruptcy court did not rely on evidentiary testimony submitted at the hearing by the Appellees' attorneys, according to its own explanation of its reasoning. And the Appellant has put forward no citations to any record evidence disputing any of the findings that the bankruptcy court used to support its decision to convert this case to Chapter 7.

Accepting the facts as the bankruptcy court found them, then, and conducting a de novo review, the Court finds that the Appellant lacked the requisite good faith necessary to proceed with a Chapter 13 reorganization. *Letterese*, 397 B.R. at 512. The Appellant failed to substantiate her income, as required. *Id.* The Appellant based her Chapter 13 plan in large part on the sale of property to which she could not substantiate ownership. *Id.* The Appellant failed to comply with court orders, bringing into question her "sincerity in seeking relief under the provisions of Chapter 13." *Kitchens*, 702 F.2d at 888. Finally, although the bankruptcy court did not directly address it, the Court also observes that the record on appeal amply supports a finding that "the circumstances under which the debtor has contracted [her] debts and [her] demonstrated bona fides, or lack of same, in dealings with [her] creditors"

demonstrates the Appellant's lack of good faith. *Id.* The findings of the Illinois court in Anna White's suit and the Appellant's subsequent conduct make her lack of good faith here abundantly clear. (R. Part 10 at 30-115, ECF No. 23-13); *Kitchens*, 702 F.2d at 888.

Therefore, the Court affirms the bankruptcy court's Order Granting Motion to Convert Case to Chapter 7 Order Granting Motion to Convert Case to Chapter 7. (Bk. ECF No. 188; R. Part 5 at 82-86, 288-94, ECF No. 23-7.)

### B. The bankruptcy court did not err by denying the Appellant's motions for reconsideration and reconversion.

The bankruptcy court did not err when it denied the Appellant's motion for reconsideration and motion for reconversion to Chapter 13 for the same reasons that the conversion to Chapter 7 was appropriate in the first place. (R. Part 5 at 87-90, 145-47, ECF No. 23-7.)

In the motion for reconsideration of the bankruptcy court's conversion order, the Appellant argued the same points that she originally argued in opposition. (R. Part 13 at 1-43, 365-99, ECF No. 23-16.) The bankruptcy court accordingly denied her motion for reconsideration, observing that the Appellant raised no new arguments, new evidence, or changes in the law that would support reconsideration. (R. Part 5 at 87-90, ECF No. 23-7.) This is the correct legal standard, and the bankruptcy court correctly applied it. *Produce Pay, Inc. v. Agrosale, Inc.*, 533 F. Supp. 3d 1140, 1147 (S.D. Fla. 2021) (Scola, J.) ("Simply put, a party may move for reconsideration only when one of the following has occurred: an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice.") (citation omitted). Finally, the bankruptcy court did not make a clear error or commit a manifest injustice that required correction by converting the Appellant's case to Chapter 7—as the Court has determined above, the bankruptcy court's decision was amply supported by the record.

In her motion for reconversion, the Appellant again raised arguments that she raised in opposition to the motion to convert, and that the bankruptcy court had already considered and rejected. (R. Part 5 at 1-43, 91-112, ECF No. 23-7.) The bankruptcy court once again rejected these arguments as being insufficient. (*Id.* at 145-47.) It also confirmed (again) that it had not relied on statements made at the conversion hearing by the Appellees' Illinois counsel; rather, it "relied on matters of record." (*Id.* at 146-47.)

Although not all courts are in agreement, generally bankruptcy courts agree that they have discretion to allow reconversion to Chapter 13 where a case has previously been converted to Chapter 7 from Chapter 13. *In re Baker*, 289 B.R. 764, 767 (Bankr. M.D. Ala. 2003) (collecting cases). Those courts that

hold they do not have discretion to allow reconversion to Chapter 13 "interpret § 706(a) as prohibiting reconversion if the case was previously converted." *In re Schweickert*, No. 3:14-BK-5838-JAF, 2016 WL 1603187, at *2 (Bankr. M.D. Fla. Apr. 19, 2016).

The Court need not decide whether reconversion to Chapter 13 is allowable under the Bankruptcy Code here. If it is, the bankruptcy court appropriately exercised its discretion to deny the Appellant's reconversion motion. *Baker*, 289 B.R. at 767; *Siskind*, 2018 WL 634547, at *1. If it is not, then the bankruptcy court's order denying reconversion must be affirmed. *Schweickert*, No. 3:14-BK-5838-JAF, 2016 WL 1603187, at *2.

Therefore, the Court therefore affirms the bankruptcy court's Order Denying Motion for Reconsideration and Order Denying Motion for Reconversion to Chapter 13. (Bk. ECF Nos. 222, 239; R. Part 5 at 87-90, 145-47, ECF No. 23-7.)

### C. The bankruptcy court appropriately considered the decision of the Illinois court regarding the Buffalo Grove Property.

The Appellant also argues that the bankruptcy court erred by failing to give effect to her "*res judicata*, adjudication on the merits, final summary judgment in favor of Appellant and against Appellees" relating to title to the Buffalo Grove Property. (Init. Brief at 9 (emphasis in original).) Effectively, the Appellant argues that because the Illinois court granted summary judgment in her favor on Anna White's claim for production of a deed in the Illinois lawsuit, the Illinois court found her to be the owner of the Buffalo Grove Property. (*Id.*)

This is a gross misreading of the Illinois court's decision. The Illinois court granted summary judgment in the Appellant's favor on the production of deed claim only because the statute of limitations had run. (R. Part 10 at 109, ECF No. 23-13.) The Illinois court therefore deliberately made no decision on the disposition of the Buffalo Grove Property. (*Id.*) It further confirmed this in a later opinion. (*Id.* at 187-88.)[11] Finally, to the extent that the Illinois court

---

[11] The Illinois court's rejection of the Appellant's belief that it granted her title to the Buffalo Grove Property is worth recounting here in full:

> [T]o the extent that defendant contends she is entitled to affirmative relief respecting Count I of the amended complaint–in the form of damages, title to the Buffalo Grove property, or some other relief–her contention is based on a misunderstanding of the Court's prior ruling. In granting defendant's summary judgment motion, the Court decided only that the claim was untimely; it did not decide who should have title to the Buffalo Grove home, whether an accounting of the Robert Trust should occur, or whether the Receipt and Release should be invalidated. Furthermore, while defendant filed a counterclaim seeking affirmative relief relating to the Buffalo Grove property, the Court dismissed all but two of her claims as implausible . . . [the] defendant then

made any determinations regarding the status of the Buffalo Grove Property, it found as a factual matter that the Appellant held title to the property <u>as Trustee of the Robert Trust</u>. (R. Part 10 at 44-45, ECF No. 23-13.)

At any rate, the bankruptcy court gave the Illinois court's decision the appropriate consideration when it found that ownership of the Buffalo Grove Property is "disputed." (R. Part 5 at 391:3-5, ECF No. 23-7.) Any further deference to the Illinois court's decision or provision of res judicata effect would necessarily have to have focused on the Illinois court's factual determination that the Appellant only holds to title to the Buffalo Grove Property <u>as the Trustee of the Robert Trust</u>. (R. Part 10 at 44-45, ECF No. 23-13.) In other words, if the bankruptcy court were to have given the Illinois court's decision the level of deference that the Appellant requests, it would have been required to find that the Appellant cannot use the Buffalo Grove Property as part of her bankruptcy estate <u>at all</u> because <u>it is not her property</u>. (*Id.*; R. Part 10 at 44-45, ECF No. 23-13.) Therefore, the bankruptcy court's decision to consider that the Buffalo Grove Property's ownership is "disputed" actually did the Appellant more help than harm. This finding is no reason to reverse any of the bankruptcy court's orders on appeal here.

### D. The Court lacks jurisdiction to address the bankruptcy court's findings of excusable neglect relating to Claims 3 and 4.

Next, the Appellant argues that the bankruptcy court improperly found excusable neglect justifying creditors' failures to respond to the Appellant's objections to Claims 3 and 4. (Init. Brief at 11-14.)

The Court lacks jurisdiction to address these issues because the Appellant never filed a notice of appeal of these orders below. 28 U.S.C. § 158(c)(2); (Not. Appeal, ECF No. 1; First Suppl. Not. Appeal, ECF No. 5; Second Suppl. Not. Appeal, ECF No. 7). Section 158 establishes that district courts have jurisdiction to hear bankruptcy appeals where those appeals are "taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules." 28 U.S.C. § 158(c)(2). Where an appellant fails to file a notice of appeal within Rule 8002's fourteen-day deadline, then, the district court lacks jurisdiction to hear the appeal. *Graddy v. Educ. Credit Mgmt. Corp.,* No. 17-3018-CIV, 2018 U.S. Dist. LEXIS 229358, at *12 (N.D Ga. Apr. 13, 2018). ("Notably, every federal court of appeals to consider the time

---

voluntarily dismissed one of those claims, and the Court found at trial that defendant failed to carry her burden of proof on her remaining claim.

(*Id.*)

limit in Rule 8002(a) . . . has concluded that Rule 8002(a) is jurisdictional."). Because the Appellant has never identified these particular orders in a notice of appeal, the Court lacks jurisdiction to address them.

To the extent the Appellant intended to appeal the bankruptcy court's Order Reserving Ruling on Objection to Claim No. 4 (Bk. ECF No. 262; R. Part 5 at 156-57, ECF No. 23-7), she has waived that appeal by failing to raise any arguments relating to that order in her Initial Brief. *Zarate v. U.S. Atty. Gen.*, 307 F. App'x 289, 290 (11th Cir. 2009) ("If an appellant fails to raise an issue in her initial brief, that issue is considered to be abandoned."). The Appellant focuses her arguments entirely on the appropriateness of the bankruptcy court's findings of excusable neglect with regards to Claims 3 and 4. (Init. Brief at 11-14.) She makes no arguments at all with regards to the appealed order; indeed, she only mentions the order once, in a footnote, while discussing case posture in the bankruptcy court. (*Id.* at 15 n.15.) Therefore, any argument with regards to this order is waived.

Accordingly, the Court does not consider her appeal of the bankruptcy court's Order Reserving Ruling on Objection to Claim No. 4 and instead dismisses the appeal of that order. (Bk. ECF No. 262; R. Part 5 at 156-57, ECF No. 23-7.)

### E. The bankruptcy court did not err in its handling of Claim 5.

The Appellant also appeals the bankruptcy court's decision overruling her objection to the Appellees' claim (Claim 5). (Init. Brief at 10.) She asserts that the bankruptcy court "violat[ed] Appellant's constitutional rights to equal protection and due process, and Appellant's rights to access to the courts." (*Id.*)

As an initial matter, the Appellant fails to make any substantive arguments regarding this issue in her initial brief; she simply asserts that her constitutional rights have been violated and then proceeds to address other arguments. (*Id.* at 10-11.) This constitutes a waiver of these arguments. *Zarate*, 307 F. App'x at 290 ("A party also waives an issue by failing to make any substantive arguments with respect to that issue.").

Nevertheless, the Court will briefly address this argument because it is also without merit. In the appealed order, the bankruptcy court overruled the Appellant's objection to the Appellees' claim, Claim 5, but did so "without prejudice to refiling in the event the Court of Appeals reverses the Judgment or remands for further proceedings." (R. Part 5 at 149, ECF No. 23-7.) The Appellant asserts by implication that the bankruptcy court was required to hold an adversarial hearing to overrule her objection to the Appellees' claim. This is incorrect.

The bankruptcy court denied the objection <u>without prejudice</u> so that the Appellant could reassert it, were the Seventh Circuit to rule in her favor and reverse the Illinois court's decision. In other words, the bankruptcy court had not yet made a final determination on the Appellant's objection to this claim. It was waiting, rightfully, until the Appellant had completed her appeal of the judgment supporting the claim. While Bankruptcy Rule of Procedure 9014 requires the bankruptcy court to hold a hearing to address the Appellant's objection to the Appellees' claim (if <u>the Appellees request it</u>), the bankruptcy court did not deny the Appellant the opportunity for a hearing. Fed. R. Bk. P. 9014(a) ("In a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party **against whom relief is sought**.") (emphasis added). The bankruptcy court instead determined only to resolve the issue after the Seventh Circuit resolved the appeal.[12]

Therefore, the Court affirms the bankruptcy court's Order Overruling, Without Prejudice, Debtors' Amended Objection to Claim. (Bk. ECF No. 242; R. Part 5 at 148-49, ECF No. 23-7.)

### F. The Appellant has waived her appeal of the remaining orders in her notices of appeal.

Additionally, the Appellant appeals two more bankruptcy court orders relating to the procedural posture of her case: the Order Granting Amended Motion for Entry of Order Extending Deadlines to File Adversary Complaint(s) to Dischargeability of Debts and to Debtor's Discharge (Bk. ECF No. 243; R. Part 5 at 150-51, ECF No. 23-7), and the Order Granting Ex Parte Motion for Continuance of Chapter 7 341 Meeting (Bk. ECF No. 263; R. Part 5 at 158-59, ECF No. 23-7.)

As with her appeal of the Order Reserving Ruling on Objection to Claim No. 4, however, the Appellant fails to make any arguments relating to these orders in her Initial Brief. (Init. Brief at 8-16.) Nor does she request any relief relating to these orders. (*Id.* at 16.) Accordingly, she has waived her appeal of these orders, and the Court will not address them. *Zarate*, 307 F. App'x at 290.

Therefore, the Court dismisses the appeal of the bankruptcy court's Order Granting Amended Motion for Entry of Order Extending Deadlines to File Adversary Complaint(s) to Dischargeability of Debts and to Debtor's Discharge (Bk. ECF No. 243; R. Part 5 at 150-51, ECF No. 23-7) and Order Granting Ex

---

[12] Of course, the Seventh Circuit has since denied the Appellant's appeal of the Illinois judgment. Whether the bankruptcy court has made any final determination on the validity of Claim 5 following the Seventh Circuit's decision to uphold the Illinois court is not at issue on this appeal.

Parte Motion for Continuance of Chapter 7 341 Meeting (Bk. ECF No. 263; R. Part 5 at 158-59, ECF No. 23-7.)

### G. The Court lacks jurisdiction to hear the Appellant's supplemental appeal of the bankruptcy court's denial of her emergency motion to stay because the supplemental appeal is untimely.

Finally, the Court lacks jurisdiction to hear the appeal of the bankruptcy court's Amended Order Denying Motion for Stay Pending Appeal. (Bk. ECF No. 292; Third Suppl. Not. Appeal at 2-3.) As the Court observed above, the deadlines for appeal established by Rule 8002(a) of the Bankruptcy Rules of Procedure are jurisdictional in nature. *Graddy*, 2018 U.S. Dist. LEXIS 229358, at *12. If a party fails to file a notice of appeal with the bankruptcy court within the Rule's fourteen-day deadline, the district court lacks jurisdiction to hear the appeal. *Id.*; 28 U.S.C. § 158(c)(2).

The bankruptcy court's amended order denying the requested stay was entered on April 14, 2023. (Bk. ECF No. 292; Third Suppl. Not. Appeal at 2-3.) The Appellant, however, did not file a notice of appeal until May 12, 2023. (Third Suppl. Not. Appeal at 2.) This is well beyond the fourteen-day deadline to file an appeal, which would have expired in this instance on April 28, 2023.[13] The Appellant's counterargument—that she titled her appeal a "Supplemental Notice of Appeal" rather than a "Supplemental Appeal" and that she hand-delivered the filing to the Clerk of the bankruptcy court—are without merit. (Resp. ¶¶ 1-4.) Regardless of the styling of her notice, the Bankruptcy Rules' deadlines apply, and regardless of the delivery method used, the notice was filed nearly two weeks too late.

The Court is therefore without jurisdiction to hear the appeal of the bankruptcy court's Amended Order Denying Motion for Stay Pending Appeal and must grant the Appellees' motion to dismiss.

### 4. Conclusion

For the reasons stated above, the Court **affirms** the following of the bankruptcy court's orders: the Order Granting Motion to Convert Case to Chapter 7 Order Granting Motion to Convert Case to Chapter 7 (Bk. ECF No. 188); the Order Denying Motion for Reconsideration (Bk. ECF No. 222); the

---

[13] Even if this appeal were an appeal by leave under Bankruptcy Rule 8004, it would be required to abide by Rule 8002's deadline. Fed. R. Bk. P. 8004(a)(1). Further, if the Appellant had appealed the order by leave under Rule 8004, she failed to comply with the Rules' requirement to file a supporting motion. Fed. R. Bk. P. 8004(b); (Third Suppl. Not. Appeal.) Therefore, the Court would still lack jurisdiction to hear the appeal if it were undertaken through Rule 8004.

Order Denying Motion for Reconversion to Chapter 13 (Bk. ECF No. 239); and the Order Overruling, Without Prejudice, Debtors' Amended Objection to Claim (Bk. ECF No. 242).

The Court **dismisses** the appeal of the following of the bankruptcy court's orders: the Order Granting Amended Motion for Entry of Order Extending Deadlines to File Adversary Complaint(s) to Dischargeability of Debts and to Debtor's Discharge (Bk. ECF No. 243); the Order Reserving Ruling on Objection to Claim No. 4 (Bk. ECF No. 262); and the Order Granting Ex Parte Motion for Continuance of Chapter 7 341 Meeting (Bk. ECF No. 263).

The Court also **grants** the Appellees' motion to dismiss the appeal of the Stay Order (**ECF No. 30**) and **dismisses** the appeal of that order. (Bk. ECF No. 292.) The hearing set for July 21, 2023, at 8:30 A.M. is **canceled**. The Clerk is directed to **close** this matter. Any pending motions are **denied as moot**.

**Done and ordered** at Miami, Florida, on July 11, 2023.

Robert N. Scola, Jr.
United States District Judge